Filed 7/25/13  P. v. Miller CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B244228 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054832) |
| v. | |
| ULYSSES GORDON MILLER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed with directions.

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

On October 13, 2011, Andre Fradiue was at his residence with several acquaintances, including someone named Rico and defendant and appellant Ulysses Miller. Miller and Rico got into an argument. After Miller took out a gun and put it on a table Fradiue told him he had to leave because he did not want a gun in his house. Fradiue and Miller went outside, where they "exchanged a couple of words" about Miller pulling his gun out on people, and which of them was "tripping." Miller, who had taken the gun outside with him, became upset. Miller and Fradiue were face-to-face, about seven feet apart from one another. Fradiue was not armed. Miller pointed his gun at Fradiue. Believing he could talk him down, Fradiue moved toward Miller telling him he shouldn't be tripping and asking why he was pointing a gun at people. Miller said he was going to get his other gun and come back and kill everybody. Miller shot Fradiue in the jaw and shoulder. Miller then told Fradiue he "knew [he] was a bitch," said he was going to get his "9," and kill everyone and ran away.

Miller's gun was double-barreled, with one barrel stacked on top of the other. Both barrels fired at the same time. A bullet from the top barrel hit Fradiue's jaw, and one from the bottom barrel hit him in the shoulder.

Evidence of Miller's affiliation with the "Goons," a criminal street gang in Lancaster, was presented in support of gang special allegations, as set forth below. Los Angeles Sheriff's Department Deputy Sheriff Welle and Detective Chung testified as experts that Miller, also known as "Shawnie" or "Deshawn" Miller, is a member of a criminal street gang and committed the crimes at issue to benefit the gang. Deputy Welle's partner had located a video with Miller in it in which Miller associated himself with a criminal street gang in the Antelope Valley. That video was uploaded to You Tube two weeks after the shooting at issue here. Deputy Welle testified that the Goons was a criminal street gang, and described the Goon gang's common logo and primary activities. He testified that Miller was a member of the Goons based on his admissions of membership in that gang in two videos. Deputy Welle also testified that the offense in this case was committed because of disrespect shown to Miller, an offense that benefited the gang.

Miller, who was 19 years old at the time of trial, testified on his own behalf. He had performed gangster rap since he was a kid and had been making music videos since he was

2

16 years old. Fradiue had done "a lot" of filming, subtitling and editing on Miller's videos. On October 13, 2011, Miller had known Fradiue for about a month; he had worked on a video for Miller. That video was made in September 2010 and referred to "goons." The "goons" reference did not refer to a gang.

Fradiue invited Miller to a get-together at his apartment on October 13, 2011. When Miller arrived there were six or seven people at Fradiue's home, including Rico with whom Miller had made videos. Fradiue and Rico were the only people Miller knew. Fradiue invited Miller because he wanted him to record with them. Miller brought his laptop, microphone and recording equipment in a laptop bag. Miller did not bring any alcohol, but alcohol was available at Fradiue's house.

Miller stayed at the gathering for only 45 minutes because things were being said that he did not want to participate in. Rico made remarks that began as jokes, but began to escalate too far and it seemed that he was jealous and was targeting Miller. Rico's remarks were petty at first, but led to him cursing and calling Miller a fake. Miller packed his things and left.

Miller never put a gun on the table, and no one came outside with him when he left. Miller did not speak to or argue with Fradiue or Rico outside the apartment, and did not hear any gunshots before he left. Miller never asked Fradiue or Rico why they were "tripping," never called Fradiue a bitch and never said he was coming back to blow everyone away.

Miller has never been a member of any gang, including the Goons.

The gun used in a video of Miller introduced at trial was a double-barreled Derringer that belonged to his girlfriend's mother. It had no firing pin, and was not operational. The weapon found by police was the same gun.

Miller had spoken with Deputy Welle, but had not told him the truth about what happened. He told Welle the shooting occurred as self-defense after someone tried to attack him. Miller lied to Welle as a favor to London Jones, Miller's codefendant in another case. Jones had two strikes and had somewhat threatened Miller to take the rap in this case in January 2012. Miller saw Jones arrive at Fradiue's party on October 13, just as Miller was leaving. Jones told Miller that Fradiue jumped into the path of a bullet shot by someone else.

3

He also said Miller would be released from custody if he told the police he had committed the shooting in self-defense.

Miller and Fradiue had had some disagreements about a month before Fradiue's party. Miller decided not to use Fradiue in his videos after Fradiue was involved in an incident of domestic violence with his girlfriend.

Miller was not in possession of any firearm at the time of his arrest.

During rebuttal, Welle testified that he had tested the double-barreled gun. The upper firing pin worked perfectly. The bottom firing hammer was broken, but worked when operated manually.

An audio recording of Welle's interview of Miller was played for the jury. During that interview Miller said a crew was supposed to support him because he was homeless. The crew, which was jealous of Miller, targeted him and forced him into a corner in many ways. Some of the people who had targeted Miller on October 13 had had alcohol. Miller had a "buzz," but was not drunk. He had been under a lot of stress which had built up to the point at which he felt he had been targeted too often. By that night, Miller was "just wasn't having it anymore," and had "got[ten] into it" with one of the guys. Miller was called outside and told to fight that person, but Miller did not want to fight. Miller had been carrying "something" that night and "being stupid," he pulled "it" out to scare the guy. However, the guy kept coming at Miller as if to attack him, even after Miller told him to stop. Miller let a shot off to scare him and the guy jumped as if to dodge the bullet, but jumped in its way instead. Miller thought he hit the guy, but was not sure.

In January 2012 Sergeant Owen went to a wash area in Lancaster after learning that Miller had been hanging out there. Owen saw a man rummaging in a plastic bag. The man ran when he saw Owen. Owen's search of the area yielded a laptop computer bag containing documents bearing Miller's name. The bag also contained a loaded Derringer .32 pistol and ammunition.

4

Miller was charged by information with attempted willful, premeditated, deliberate murder. (Pen. Code, §§ 664, 187;[1] count 1.) The information also alleged that, (1) the offense was committed for the benefit, at the direction of and in association with a criminal street gang with the intent to promote, further and assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(4); (2) Miller personally and intentionally discharged a firearm which caused great bodily injury within the meaning of section 12022.53, subdivision (d); (3) Miller personally discharged a firearm within the meaning of 12022.53, subdivision (c); and (4) Miller personally used a firearm within the meaning of section 12022.53, subdivision (b). Before trial, a charge of assault with a firearm (§ 245, subdivision (a)(2); count 2) was added, along with a special allegation that the offense was committed for the benefit of, at the direction of and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members (§ 186.22, subd. (b)(4)), and that Miller personally used a firearm and inflicted great bodily injury (§§ 12022.5, subd. (a), 12022.7, subd. (a)).

A jury convicted Miller on both counts. The special allegations that the attempted murder was committed willfully, deliberately and with premeditation, and that Miller personally discharged a firearm within the meaning of section 12022.53, subdivisions (b), (c) and (d) were found true as to count 1, and the special allegation that Miller personally used a firearm and inflicted great bodily harm was found true as to count 2. The gang allegations as to both counts were found untrue. Miller was sentenced to life plus 25 years to life (count 1), and 17 years, stayed, as to count 2 (§§ 12022.5, subd. (a)(1)[2]; 12022.7, subd. (a); 654). This appeal followed.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] In contrast with the reporter's transcript, the abstract of judgment and minute order state that an enhancement pursuant to section 12022, subdivision (a)(1) was imposed. Conflicts between the court's oral pronouncement of judgment as reflected in the reporter's transcript and the clerk's transcript are generally presumed to be clerical in nature and are resolved in favor of the pronouncement as reflected in the reporter's transcript, unless the circumstances dictate otherwise. (*People v. Mitchell* (2001) 26

After examination of the record, Miller's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) raising no issues, and asking this court to independently review the record. The *Wende* brief contained a declaration from counsel stating that she had reviewed the record, and had written to Miller advising him he could file a supplemental brief if he chose to do so. On March 28, 2013, we advised Miller he had 30 days within which to personally submit any contentions or issues he wished us to consider. Miller filed a supplemental brief asking this court to consider his contentions of error regarding discrimination; violation of due process; insufficient evidence; verdict contrary to law or evidence; instructional error; and newly discovered evidence of innocence.

## DISCUSSION

Under *People v. Kelly* (2006) 40 Cal.4th 106, we find that Miller's supplemental brief does not raise any arguable issues. Miller's challenge to the allegedly discriminatory use of evidence to demonstrate his gang membership and motive or proclivity to commit attempted murder finds no support in the record in this matter. The jury rejected all allegations that Miller's crimes were committed for the benefit or direction of, or in association with, a criminal street gang. Given the jury's not true findings as to the gang allegations, we reject Miller's assertions regarding the discriminatory and unduly prejudicial use of gang evidence. Miller's assertion that there is an absence of evidence of intent or motive to commit attempted murder, and that the verdict is against the evidence raise only sufficiency-of-the-evidence claims. The evidentiary record is sufficient to support the jury's verdict. His assertion regarding the existence of new evidence is not part of the appellate record and is not cognizable on appeal. (See *People v. Smith* (2007) 40 Cal.4th 483, 507.) It cannot be reviewed on this record. And Miller's claim that the trial court failed adequately to instruct the jury as to

Cal.4th 181, 185.) Here there are no circumstances which suggest that the reporter's transcript is in error; in fact, the record indicates the transcript is correct, and there is no claim to the contrary.

6

the elements of the charged offense of attempted murder is belied by the appellate record. Miller asks that we construe the instant appeal as a petition for writ of habeas corpus. We decline the invitation, but do so without prejudice to his ability to file an original petition.

We have examined the entire record and are satisfied that Miller's appellate counsel has complied with her responsibilities and no arguable issues exist. (*Smith v. Robbins* (2000) 528 U.S. 259 [120 S.Ct. 746, 145 L.Ed.2d 756]; *People v. Kelly*, *supra*, 40 Cal.4th at pp. 109–110; *Wende*, *supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The trial court is directed to amend the abstract of judgment as follows: The abstract shall reflect that the trial court imposed and stayed an enhancement pursuant to Penal Code section 12022.5, subdivision (a)(1). A copy of the corrected abstract of judgment shall be sent to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.

We concur:


MALLANO, P. J.


ROTHSCHILD, J.


7